**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **NATHANIEL SHAW**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. **2:07-CV-606-ID-SRW** |
| | ) | |
| **D.T. MARSHALL**, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## SPECIAL REPORT

COME NOW Defendants Art Baylor and C. J. Coughlin, by and through counsel, and respectfully submit this Special Report.

## I. PLAINTIFF'S ALLEGATIONS

1.    With regard to Defendants Baylor and Coughlin, Plaintiff alleges "police abuse" on May 9, 2007. Specifically, Plaintiff states that "Plaintiff left side of face was mauled into the hot hood of Defendants truck causing Plaintiff to be nearly blind in Plaintiff left eye due to the negligence of the MCDF medical staff." (Doc. 1, at 3).

2.    Plaintiff states the alleged incidents occurred at "Montgomery County Police Department Detective Division and Publix grocery store lot" (Doc. 1, at 2). Plaintiff distinguishes between the City and County police, as can be seen in his naming "Sheriff D. T. Marshall, Montgomery County Police Dept." and "Art Baylor, Chief of Police, Montgomery Police Dept." (Doc 1, at 2). However, because named-defendant Coughlin works in the Montgomery Police Department ("MPD") Detective Division, this Report will address Mr. Shaw's arrest in the Publix parking lot and his encounters with Defendant Coughlin.

3.     With regard to Defendants Baylor and Coughlin, Plaintiff requests a full-scale investigation of the Montgomery Police Department's arrest procedures and the taking of property. Plaintiff also requests that each defendant pay $75,000 in punitive damages and $50,000 for pain and mental anguish.

## II. FACTS

4.     At approximately 11:10 a.m. on May 9, 2007, the Montgomery Police Department ("MPD") dispatcher requested a patrol unit to the 5300 block of Atlanta Highway in reference to a black male subject wanted for committing fraud. (Exhibit A – Affidavit of K. L. Byrd).

5.     MPD Officers responded to the call, and as they turned into the Publix parking lot, they observed Shaw exiting the blue Ford Focus described in the dispatch call. (Exhibit A). The officers approached Shaw and asked him to step to the police vehicle, which he did. (Exhibit A). While the officers were patting Shaw down for weapons, the bank manager who had called in the complaint on Shaw pulled up next to them and identified Shaw as the man wanted for bank fraud. (Exhibit A).

6.     Shaw refused to identify himself at the scene of the arrest, but was otherwise compliant. (Exhibit A). The arresting officers had no problems handcuffing Shaw or getting Shaw into the police vehicle. (Exhibit A). During his apprehension and arrest, Shaw was not injured and did not complain of any injuries. (Exhibit A).

7.     The arrest occurred without incident, and Shaw was taken to MPD headquarters where Detective C. J. Coughlin met with him. (Exhibit A; Exhibit B – Affidavit of C. J. Coughlin). Sgt. Coughlin was assigned to investigate the fraud and identity theft charges against Shaw. (Exhibit B). As the detective assigned to investigate

the case, Sgt. Coughlin prepared most of the paperwork in Mr. Shaw's investigative file. (Exhibit B).

8.    Sgt. Coughlin escorted Shaw into his office and attempted to obtain a statement from him. (Exhibit B). Shaw told Sgt. Coughlin that he did not know his name and that he was too high on crack cocaine to know anything. (Exhibit B). Sgt. Coughlin did not see any sign of injuries on Shaw's face or person, and Shaw did not complain of any injuries or mistreatment. (Exhibit B). Also, in his arrest photo, Plaintiff's face is symmetrical and shows no swelling, bleeding, discoloration or other signs of trauma. (Exhibit C – Arrest Photo).

9.    After this initial meeting at MPD headquarters, Shaw was placed back in a holding cell and subsequently transported and booked into the Montgomery County Detention Facility ("MCDF"). (Exhibit B).

10.    MPD impounded Shaw's vehicle and conducted an inventory search which revealed multiple identification cards in various names, and what appeared to be crack cocaine in an eyeglass case found on the floorboard of the vehicle. (Exhibit B). The eyeglass case was turned over to the Narcotics Bureau for analysis. (Exhibit B).

11.    On May 11, 2007, Sgt. Coughlin went to the MCDF with another MPD Detective and attempted to interview Mr. Shaw, but was unsuccessful. (Exhibit B).

12.    On May 24, 2007, Sgt. Coughlin went back to the MCDF, accompanied by a United States Secret Service agent. (Exhibit B). Sgt. Coughlin provided the MCDF personnel with Shaw's glasses and attempted to interview Mr. Shaw again, but was unsuccessful. (Exhibit B).

13.    Defendant Baylor is the Chief of Police for the Montgomery Police

Department, and as such oversees oversee all police action within the City of Montgomery. (Exhibit D – Affidavit of A. D. Baylor). Defendant Baylor was not the direct supervisor of Sgt. C. J. Coughlin or the officers who arrested Shaw. (Exhibit D).

14.     Defendant Baylor was not present at the scene where Shaw was apprehended and arrested. (Exhibit D). Defendant Baylor did not place Shaw into custody, nor did he receive any reports, written or oral, regarding Shaw's arrest. (Exhibit D). To date, Defendant Baylor has never spoken to or met Shawl, and he has had no personal involvement in the instant case. (Exhibit D).

### III. DEFENSES

15.     Defendants Baylor and Coughlin assert the following defenses:

16.     Defendants generally deny all material allegations of the Complaint, demand strict proof thereof, and deny that Plaintiff is entitled to any relief.

17.     Defendants aver that Plaintiff's Complaint fails to state a cause of action against these Defendants upon which relief can be granted.

18.     Defendants plead the general issue and deny any allegations not specifically denied.

19.     Defendants Baylor and Coughlin are not correct parties in interest.

20.     Defendants plead that Plaintiff's claims are barred for failure to comply with *Code of Alabama* §11-47-23 (1975).

21.     Defendants plead that Plaintiff's claims are barred for failure to comply with *Code of Alabama* §11-47-192 (1975).

22.     Defendants plead qualified immunity.

23.     Defendants aver that they are immune under *Code of Alabama* §6-5-338

(1975).

24.    Defendants aver that they are immune under *Code of Alabama* §36-22-7 (1975).

25.    Defendants plead estoppel, waiver, laches and unclean hands.

26.    Defendants reserve the right to amend these defenses as allowed by the Court.

### IV. MEMORANDUM OF POINTS AND AUTHORITIES

27.    Defendants Baylor and Coughlin submit the following memorandum of points and authorities in support of their positions:

### A. Excessive Force

28.    Plaintiff Shaw claims police used excessive force, "mauling" him into the hood of a vehicle causing injury to his left eye. (Doc. 1). The evidence reflects that Defendants Baylor and Coughlin were not present or involved in Shaw's apprehension and arrest. (Exhibits B and D). Further, there is no indication that officers involved in Shaw's arrest used any force other that the de minimus force required to handcuff Shaw and place him in the police vehicle for transport. (Exhibit A).

29.    Plaintiff has alleged an excessive force claim under 42 U.S.C. §1983 claiming that his Fourth Amendment rights against unreasonable seizure have been violated as a result of his treatment during his arrest. (Doc. 1).

30.    To determine whether the amount of force used by a police officer was appropriate, the court must consider "whether a reasonable officer would believe that this level of force is necessary in the situation at hand." Willingham v. Loughnan, 261 F.3d 1178, 1186 (11th Cir. 2001). The court must balance "'the nature and quality of the

intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." <u>Graham</u>, 490 U.S. at 396, <u>quoting</u> <u>Tennessee v. Garner</u>, 471 U.S. 1, 8 (1985).  When balancing the necessity of using some force against an arrested person's constitutional rights, a variety of factors are considered, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." <u>Graham</u>, 490 U.S. at 396. Thus, the force used by a police officer during the course of an arrest "must be reasonably proportionate to the need for that force, which is measured by the severity of the crime, the danger to the officer, and the risk of flight." <u>Lee v. Ferraro</u>, 284 F.3d 1188, 1198 (11 Cir. 2002).

31.     The evidence shows that Defendants Baylor and Coughlin applied no force to Plaintiff Shaw. Defendant Baylor has not had any contact with Shaw, and Defendant Coughlin has attempted to speak to Shaw on three occasions, but did not use any force or threat of force with regard to those attempts.

32.     The officers who were, in fact, involved in Shaw's arrest testified that Shaw was compliant and that the arrest was accomplished without incident. Clearly, the de minimus amount of force required to physically take a suspect into custody falls within the acceptable level deemed reasonably proportionate.

## B. Qualified Immunity

33.     Defendants Baylor and Coughlin, as well as the officers present at Shaw's arrest, are entitled to qualified immunity for any alleged constitutional violations because they were acting within the line and scope of their duties. The defendant police officers were, at all relevant times, acting within the line and scope of their duty performing

discretionary acts. Plaintiff's sole complaint against the MPD defendants is that he was subjected to excessive force incident to his arrest. (Doc. 1).

34.    Alabama law has defined discretionary acts as "[t]hose acts [as to which] there is no hard and fast rule as to course of conduct that one must or must not take" and those requiring "exercise in judgment and choice and [involving] what is just and proper under the circumstances." Williams v. Crook, 741 So.2d 1074, 1076 (Ala. 1999) citing Blacks Law Dictionary, 467 (6th ed. 1990).

35.    Qualified immunity is an affirmative defense to a §1983 action against a government official sued in his or her individual capacity. See Wilson v. Strong, 156 F.3d 1131, 1135 (11th Cir.1998). Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); see also Rich v. Dollar, 841 F.2d 1558, 1563 (11th Cir.1988). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

36.    In order to receive qualified immunity, a public official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Lee v. Ferraro, 284 F. 3d 1188, 1194 (11th Cir. 2002).

37.    Defendant Baylor was acting in his official capacity as Chief law enforcement officer at all times relevant to the Complaint. As Chief of Police, Defendant Baylor was acting within the scope of his discretionary authority, namely to supervise

and oversee MPD, when Plaintiff Shaw was arrested. Therefore the first prong of the qualified immunity test is satisfied as to Defendant Baylor.

38.    It is undisputed that Defendant Coughlin was also acting in his capacity as a police officer, during all three meetings he had with Plaintiff Shaw. As a detective, Sgt. Coughlin has discretionary authority to conduct investigations of crime, which is what he was doing each time he had contact with Plaintiff Shaw. Thus the first prong of the qualified immunity test is satisfied as to Defendant Coughlin.

39.    Defendants Baylor and Coughlin are entitled to qualified immunity from Plaintiff Shaw's § 1983 Claims. To be shielded from suit by qualified immunity, a public official must first show that he was acting within the scope of his discretionary authority. Vinyard v. Wilson, 311 F.3d 1340, 1336 (11th Cir.2002). If he does so, the burden then shifts to the plaintiff to show, first, facts establishing that a constitutional violation occurred, and second, that the constitutional right was clearly established at the time of the violation. Hope v. Pelzer, 536 U.S. 730, 122 S.Ct. 2508, 2513, 153 L.Ed.2d 666 (2002); Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001).

40.    It cannot be disputed that Defendants Baylor and Coughlin were, at all times relevant to this Complaint, acting within the scope of their discretionary authority. Thus, the burden shifts to the plaintiff to show a constitutional violation occurred and that the constitutional right was clearly established at the time of the alleged violation. Plaintiff can prove neither. Defendants Baylor and Coughlin are due to be dismissed from this action because Plaintiff cannot show that they were involved in Plaintiff's arrest – because they were not.

## C. Qualified Immunity for Supervisors

41.     A supervisor sued in his individual capacity in a federal civil rights action is entitled to qualified immunity unless a reasonable supervisor would have known that his actions were unlawful in light of clearly established law and information that he possessed.  Dolihite v. Maughon, 74 F. 3d 1027 (11th Cir. 1996), cert. denied, 519 U.S. 870 (1997).   Such liability must be predicated on either actual participation in the unconstitutional act by the supervisor or a causal connection between the supervisor's action and a plaintiff's injury.  Id.  In this case there was neither. Again, Baylor was not present at the time of the detention. (Exhibit D).

42.     Baylor had nothing to do with Shaw's arrest. (Exhibit D). There is no causal connection between any action (or inaction) by Chief Baylor and Plaintiff's alleged injuries.  Therefore, Baylor is entitled to qualified immunity. See e.g. Gold v. City of Miami, 121 F. 3d 1442 (11th Cir. 1997), cert. denied, 525 U.S. 870 (1998) (police chief entitled to qualified immunity for alleged failure to train officers which such failure to train was alleged to have caused injury); Baker v. Putnal, 75 F. 3d 190 (5th Cir. 1996) (no proof of police chief's knowledge of gravity of situation so that he could have responded in time to prevent plaintiff's injury).

43.     Shaw's Complaint alleges no personal involvement on the part of Chief Baylor.  Therefore, the suit against Defendant Baylor in his individual capacity pursuant to § 1983 must fail.

## D. Discretionary Function Immunity

44.     Section 6-5-338, Code of Alabama, 1975 statutorily provides law enforcement officers with immunity from state law tort claims arising out of acts

committed while the law enforcement officers engage in the performance of discretionary functions. The performance of the discretionary functions must be within the scope of the officer's law enforcement duties. In this case, Baylor is sued, ostensibly for supervising all MPD police officers, and Coughlin is sued because he was the investigating detective who prepared all the paperwork related to Shaw. Both men were performing discretionary functions within the scope of their duties as law enforcement officers.

45.     Section 6-5-338(a) states:

> [E]very peace officer, except constables, who is employed or appointed pursuant to the Constitution or statutes of this state, whether appointed or employed as such peace officer by the state or a county or a municipality thereof, or by an agency or institution, corporate or otherwise, created pursuant to the Constitution or laws of this state and authorized by the Constitution or laws to appoint or employ police officers or other peace officers, and whose duties are prescribed by the law, or by the lawful terms of their employment or appointment include the enforcement of, or the investigation or reporting of violations of, the criminal laws of this state, and who is empowered by the laws of this state to execute warrants, to arrest and to take into custody persons who violate, or who are lawfully charged by warrant, indictment or other lawful process with violations of, the criminal laws of this state shall at all times be deemed to be officers of this state, and as such shall have immunity from tort liability arising out of his or her conduct in the performance of any discretionary function within the line and scope of his or her enforcement duties. Ala. Code §6-5-338(a) (1975).

46.     The framework for analyzing discretionary function immunity claims under this code section involves a two-prong inquiry. If the defendant officer can prove that he was "engaged in the performance of discretionary functions at the time the alleged torts occurred," then the burden shifts "to the plaintiff to demonstrate the defendant acted

in bad faith, with malice or willfulness in order to deny them immunity." <u>Sheth v.</u> <u>Webster</u>, 145 F. 3d 1231, 1238-39 (11th Cir. 1998); <u>Wright v. Wynn</u>, 682 So. 2d 1, 2 (Ala. 1996).

47.     As set out above, Defendants Baylor and Coughlin were both acting within the line and scope of their duties at all times relevant. Further, there is no evidence that Defendants Baylor and Coughlin acted in bad faith, with malice or willfulness with respect to the alleged unlawful actions concerning Plaintiff because they did not.

48.     Thus, Defendants Baylor and Coughlin cannot be held liable in light of the immunity provisions of § 6-5-338. <u>See</u> <u>Wood v. Kelser</u>, 323 F. 3d 872 (11th Cir. 2003) (officers had discretionary function immunity for false arrest and malicious prosecution); <u>see also</u> <u>Ex parte City of Montgomery</u>, 758 So. 2d 567 (Ala. 1999) (municipality and officer entitled to immunity from arrestee's claims of malicious prosecution, assault and false imprisonment); <u>Moore v. Adams</u>, 754 So. 2d 630 (Ala. 1999) (city and state trooper sued in individual capacity by homeowner for false imprisonment, trespass and assault as a result of the execution of search warrant were entitled to discretionary immunity where officers broke open homeowner's door after announcing their presence three times and demanding entry); <u>Montgomery v. City of Montgomery</u>, 732 So. 2d 305 (Ala. Civ. App. 1999) (police officers were engaging in discretionary function when they made an arrest and were immune from liability on arrestee's malicious prosecution claim although arrestee was not person named in warrant and despite conflicting facts relating to the identity of the arrestee which were available to the officers at the time of the arrest); <u>Wright v. Wynn</u>, 682 So. 2d 1 (Ala. 1996) (officers immunity from false arrest in mistaken identity situation); <u>Hardy v. Town of Hayneville</u>, 50 F. Supp. 2d 1176 (M.D.

Ala. 1999); <u>Williams v. City of Montgomery</u>, 48 F. Supp. 2d 1317 (M.D. Ala. 1999) (police supervisor did not act willfully or maliciously or in bad faith in deciding to postpone overnight investigation of domestic violence victim's felony stalking claims; officers were entitled to discretionary function immunity from tort liability even if supervisor had reason to believe victim was in eminent peril).

49.     As police officers, Baylor and Coughlin must exercise judgment and discretion on a constant basis. The nature of their jobs dictates that they choose what is just and proper under the circumstances.  <u>See</u> <u>Ex parte City of Gadsden</u>, 781 So. 2d 936, 938 (Ala. 2000). The burden shifts to Plaintiff to demonstrate that Defendants acted in bad faith, with malice or willfulness in order to deny them immunity. <u>Sheth v. Webster</u>, 145 F. 3d 1231 (11th Cir. 1998); <u>see also</u> <u>Wright v. Wynn</u>, 682 So. 2d 1 (Ala. 1996).

## E. Respondeat Superior

50.     Even if the Court were to conclude that Defendant Baylor was involved in the supervision of the officers on the day that Plaintiff was detained, supervisory personnel cannot be held liable under § 1983 for the actions of subordinates under the theory of respondeat superior; they may only be held liable if they personally participated in the acts comprising alleged constitutional violations or instigated or adopted a policy of violating constitutional rights.  <u>Ortega v. Christian</u>, 85 F. 3d 1521, 1526 (11th Cir. 1996) (police chief not liable under § 1983 for officer's false arrest of plaintiff where no evidence that chief approved of officer's decision to arrest); <u>Adams v. Poag</u>, 61 F. 3d 1537, 1544 (11th Cir. 1996).

51.     Thus Defendant Baylor cannot be held liable under a theory of respondeat superior where he had no direct involvement in the underlying facts.

**F. Sovereign Immunity**

52.    Section 6-5-338, Code of Alabama (1975), specifies governmental or sovereign immunity from tort liability for the conduct of police officers in the line of duty.  The statute provides that police officers in the line of duty "shall at all times by deemed to be officers of this state, and as such shall have immunity from tort liability arising out of his or her conduct in the performance of any discretionary function within the line and scope of his or her law enforcement duties." Ala. Code §6-5-338 (1975).

53.    The operative words contained in the statute are that a law enforcement officer is deemed to be an "officer of the state."  As a consequence, he/she is entitled to the sovereign or governmental immunity established by Article I §14 of the Constitution of Alabama (1901).  That constitutional provision provides that the State of Alabama shall never be made a defendant in any court of law or equity.  The courts of Alabama have held that a sheriff and his deputies are officers of the state and have sovereign immunity pursuant to Article I §14 of the Alabama Constitution of 1901.  Drain v. Odom, 631 So. 2d 971 (Ala. 1994); Wright v. Bailey, 611 So. 2d 300 (Ala. 1992) (deputy sheriff entitled to sovereign immunity in action alleging failure to arrest motorist he knew or should have known was intoxicated); Boshell v. Walker County Sheriff, 598 So. 2d 843 (Ala. 1992) (sheriff immune from suit seeking damages for assault and false arrest); Hereford v. Jefferson County, 586 So. 2d 209 (Ala. 1991) (sheriff and deputy immune from robbery victim's suit based on release of prisoner who was serving a life term).

54.    Section 6-5-338 makes a municipal police officer an officer of the state. Thus, Baylor and Coughlin, both officers, are entitled to the same immunity that is provided to sheriffs and deputy sheriffs by Article I §14 of the Alabama Constitution.

55.     Plaintiff's claims against Chief Baylor and Sgt. Coughlin in their individual capacities are statutorily barred pursuant to § 6-5-338, and summary judgment should be granted on this ground as to all claims against them in their individual capacities.

## V. CONCLUSION

56.     Plaintiff cannot succeed on any claims for Fourth Amendment violations. It is clear in this case that neither Baylor nor Coughlin was involved in Plaintiff Shaw's arrest. Therefore, Shaw's claims of constitutional violations are due to be dismissed as to Defendants Baylor and Coughlin.

57.     Discretionary function immunity under § 6-5-338 and qualified immunity under § 1983 protects police and municipal officials from tort liability when acting within the line and scope of their duties. Defendants Baylor and Coughlin acted in the scope of their duties at all times relevant to the Complaint. Accordingly, Plaintiff's claims should be dismissed on the grounds of state and federal immunity.

58.     Put simply, Defendants Baylor and Coughlin have not violated Plaintiff's constitutional rights. In light of the foregoing, Plaintiff's Complaint is due to be dismissed to the extent it names Chief Baylor and Sgt. Coughlin as defendants.

Respectfully submitted this 4th day of September 2007.


/s/ Allison H. Highley_____
Allison H. Highley (HIG024)
Attorney for Defendants Art Baylor
and C. J. Coughlin

**OF COUNSEL**
City of Montgomery, Legal Department
Post Office Box 1111
Montgomery, Alabama 36101
(334) 241-2050 Telephone

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 4, 2007, I electronically filed the foregoing

with the Clerk of Court which will cause e-mail notification to be sent to the following:

>Wayne P. Turner, Esq.
>Post Office Box 152
>Montgomery, Alabama 36101
>
>Constance C. Walker, Esq.
>Thomas T. Gallion, III, Esq.
>Haskell Slaughter Young & Gallion, LLC
>305 South Lawrence Street
>Montgomery, Alabama 36104

I further certify that on September 4, 2007, I mailed the foregoing via U.S. Mail,

first-class postage prepaid, addressed as follows:

>Nathaniel Shaw
>Montgomery County Detention Facility
>Post Office Box 4599
>Montgomery, Alabama 36103

>/s/ Allison H. Highley
>Of Counsel

15

Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| NATHANIEL SHAW, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. **2:07-CV-606-ID-SRW** |
| | ) | |
| **D.T. MARSHALL**, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## AFFIDAVIT OF K. L. BYRD

**STATE OF ALABAMA**    )

**COUNTY OF MONTGOMERY**    )

Before me, a Notary Public in and for said State and County, personally appeared **K. L. Byrd** and, after first being duly sworn by me, did depose and state as follows:

1.    My name is K. L. Byrd and I am over nineteen years of age.  I have first-hand knowledge of the facts contained herein and am competent to testify thereto.

2.    I am currently a Sergeant for the Montgomery Police Department, and am currently assigned to the Detective Division.

3.    At approximately 11:10 a.m. on May 9, 2007, the Montgomery Police Department dispatcher requested a patrol unit to the 5300 block of Atlanta Highway in reference to a black male subject wanted for committing fraud.

4.    Sgt. Davis and I responded to the call, and as we turned into the Publix parking lot, we observed Mr. Shaw exiting the blue Ford Focus described in the dispatch call. We approached Mr. Shaw and asked him to step to the police vehicle, which he did. While we conducted a pat down search of Mr. Shaw down for weapons, the complainant pulled up beside us and identified Mr. Shaw as the man wanted for bank fraud.

5.    Mr. Shaw refused to identify himself at the scene of the arrest, but was otherwise compliant. We had no problems handcuffing Mr. Shaw or getting him into the police vehicle. During his apprehension and arrest, Mr. Shaw was not injured, nor did he complain of any injuries. The arrest occurred without incident, and Mr. Shaw was taken to MPD headquarters for questioning in the Detective Division.

6.    I have not violated Mr. Shaw's constitutional rights.

**Further Affiant saith not.**

Sgt. K. L. Byrd #130
Sgt. K. L. Byrd
Montgomery Police Department

SWORN to and SUBSCRIBED before me this the _4th_ day of _September_ 2007.

Notary Public
My commission expires:    NOTARY PUBLIC STATE OF ALABAMA AT LARGE
MY COMMISSION EXPIRES: Feb 22, 2010
BONDED THRU NOTARY PUBLIC UNDERWRITERS

2

Exhibit B

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| NATHANIEL SHAW, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. **2:07-CV-606-ID-SRW** |
| | ) | |
| **D.T. MARSHALL**, et al., | ) | |
| | ) | |
| Defendants. | ) | |

<u>**AFFIDAVIT OF C. J. COUGHLIN**</u>

**STATE OF ALABAMA** )

**COUNTY OF MONTGOMERY** )

Before me, a Notary Public in and for said State and County, personally appeared

**C. J. Coughlin** and, after first being duly sworn by me, did depose and state as follows:

1.      My name is C. J. Coughlin and I am over nineteen years of age. I have first-hand knowledge of the facts contained herein and am competent to testify thereto.

2.      I am a Sergeant in the Montgomery Police Department, and am currently assigned to the Detective Division.

3.      On May 9, 2007, I was tasked with investigating the fraud and identity theft charges against Nathaniel Shaw, a black male who had been taken into custody earlier that day. As the detective assigned to investigate the case, I prepared most of the paperwork in Mr. Shaw's investigative file.

4.      I was not present at Mr. Shaw's apprehension or arrest. My first contact with Mr. Shaw occurred when he was brought into the MPD Detective Division for questioning, shortly after his arrest. I escorted Mr. Shaw into my office and attempted to obtain a statement from him. Mr. Shaw told me that he did not know his name and that he

was too high on crack cocaine to know anything. I did not see any sign of injuries on Mr. Shaw's face or person, and he did not complain of any injuries or mistreatment.

5.      After this, Mr. Shaw was placed back in a holding cell and subsequently transported and booked into the Montgomery County Detention Facility ("MCDF").

6.      MPD impounded Mr. Shaw's vehicle and conducted an inventory search which revealed multiple identification cards in various names, and what appeared to be crack cocaine in an eyeglass case found on the floorboard of the vehicle. The eyeglass case was turned over to the Narcotics Bureau for analysis.

7.      On May 11, 2007, I went to the MCDF with another MPD Detective and attempted to interview Mr. Shaw, but Mr. Shaw refused to acknowledge his Miranda rights and I terminated the conversation.

8.      On May 24, 2007, I went back to the MCDF, accompanied by a United States Secret Service agent. I provided the MCDF personnel with Mr. Shaw's glasses and attempted to interview Mr. Shaw again, but he again refused to acknowledge his Miranda rights and I terminated the conversation.

9.      I have not violated Mr. Shaw's constitutional rights.

**Further Affiant saith not.**

_C. J. Coughlin_  1008
C. J. Coughlin
Montgomery Police Department

SWORN to and SUBSCRIBED before me this the 4th day of September 2007.

_Susan A. Grant_
Notary Public
My commission expires: 07/11/11

2

# Exhibit C



Exhibit D

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

NATHANIEL SHAW,                    )
                                   )
        Plaintiff,                 )
                                   )
v.                                 )        Case No. **2:07-CV-606-ID-SRW**
                                   )
**D.T. MARSHALL**, et al.,         )
                                   )
Defendants.                        )

## <u>AFFIDAVIT OF A. D. BAYLOR</u>

**STATE OF ALABAMA**            )

**COUNTY OF MONTGOMERY**    )

Before me, a Notary Public in and for said State and County, personally appeared **A. D. Baylor** and, after first being duly sworn by me, did depose and state as follows:

1.      My name is A. D. Baylor and I am over nineteen years of age. I have first-hand knowledge of the facts contained herein and am competent to testify thereto.

2.      I am the Chief of Police for the Montgomery Police Department, and have been since I was appointed to the position on November 29, 2004. As Chief of Police, I oversee all police action within the City of Montgomery, but I was not the direct supervisor of Sgt. C. J. Coughlin or the officers who arrested Nathaniel Shaw on May 9, 2007.

3.      I first learned of Mr. Shaw's allegations when I was served with his lawsuit. I was not present at the scene where Nathaniel Shaw was apprehended and arrested on May 9, 2007. I did not place Mr. Shaw into custody, nor did I receive any reports, written or oral, regarding Mr. Shaw's arrest. To date, I have never spoken to or met Mr. Shaw. Put simply, I have had no personal involvement in Mr. Shaw's case.

4.    The City of Montgomery has no custom or policy to deprive criminal suspects of their constitutional rights. To the contrary, the Montgomery Police Department has been charged with enforcing the laws, and does so to the best of its ability.

5.    I have not violated Mr. Shaw's constitutional rights.

**Further Affiant saith not.**

A. D. Baylor, Chief of Police
Montgomery Police Department

SWORN to and SUBSCRIBED before me this the 4th day of September 2007.

Notary Public
My commission expires: 2-17-2010

NOTARY PUBLIC STATE OF ALABAMA AT LARGE
MY COMMISSION EXPIRES: Feb 17, 2010
BONDED THRU NOTARY PUBLIC UNDERWRITERS

2