IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| NATHANIEL SHAW, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:07cv606-ID |
| | ) | (WO) |
| D.T. MARSHALL, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.  PROCEDURAL HISTORY

In this 42 U.S.C. § 1983 action, Nathaniel Shaw ("Shaw"), a pre-trial detainee, claims his civil rights were violated during his incarceration in the Montgomery County Detention Center.  He names as defendants Art Baylor, City of Montgomery Chief of Police; C.J. Coughlin and J.W. Hall, City of Montgomery Police Officers; D. T. Marshall, Sheriff of Montgomery County; Gina Savage, Director of the Montgomery County Detention Facility; Cassandra Smith, Corrections Officer at the Montgomery County Detention Facility; Sondra Wright, Montgomery County Detention Facility Clerk Typist; and Dr. Johnny E. Bates, a Quality Correctional Healthcare Physician.  Specifically, Shaw asserts the following claims:

> (1)    Chief Baylor and Officers Coughlin and Hall violated his constitutional rights when they subjected him to the use of excessive force during  his arrest in a grocery store parking lot.

(2)     Officers Coughlin and Hall violated his constitutional rights by subjecting him to an unlawful arrest without a warrant or probable cause.

(3)     Officers Coughlin and Hall gave false statements concerning the circumstances of his arrest and the reasons for his detention during a preliminary hearing in the Montgomery County Circuit Court.

(4)     During his transfer from the city jail to the county jail, jailers and/or corrections officers unlawfully seized his personal property, including currency, a wallet, a gold chain with a cross medallion, a watch, and a masonic ring.

(5)     Savage, Smith, and Wright prevented him from accessing the courts by illegally confiscating and/or shredding his outgoing mail and opening his mail from the court outside of his presence.

(6)     Officer Smith and other Montgomery County Jail officials retaliated against him for filing an administrative complaint by attempting to incite other inmates to assault him and giving him incorrect medication for his diabetes.

(7)     Dr. Bates engaged in medical malpractice and acted with deliberate indifference to his health by failing to treat his eye injury, refusing to send him to a free-world physician, and prescribing incorrect medications for the treatment of diabetes.

(8)     Dr. Bates gave false information in an affidavit, thereby committing perjury.

(9)     Defendants Marshall and Savage subjected him to unconstitutional conditions of confinement in the

Montgomery County Detention Facility.[1]

The defendants filed written reports and supporting evidentiary materials addressing Shaw's claims for relief.  (Doc. Nos. 22, 23, 41, 47, 48, 49.)  The court deems it appropriate to treat these responsive pleadings as a motion for summary judgment. Upon consideration of such motion, the evidentiary materials filed in support thereof, and the responses in opposition filed by Shaw, the court concludes that the defendants' motion for summary judgment should denied with respect to Shaw's excessive force claim against Officers Coughlin and Hall and granted with respect to the remaining claims against all of the defendants.

## II.  STANDARD OF REVIEW

To survive the defendants' properly supported motion for summary judgment, the plaintiffs are required to produce some evidence supporting his constitutional claim.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  They must "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324.  A plaintiff's conclusory allegations do not provide sufficient evidence to oppose a motion for summary judgment.  *Harris v. Ostrout*, 65 F.3d 912 (11th

---

[1] Shaw's pleadings are not a model of clarity.  In the interest of judicial economy, the court has consolidated and reorganized the claims raised in Shaw's complaint (Doc. No. 1) and amendments to his complaint (Doc. No. 30).

Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984).  Consequently,

when a party fails to make a showing sufficient to establish the existence of an element

essential to that party's case, and on which that party will bear the burden of proof at trial,

summary judgment is due to be granted in favor of the moving party.  *Celotex Corp.*, 477

U.S. at 322; *Barnes v. Southwest Forest Indus., Inc.*, 814 F.2d 607 (11th Cir. 1987).

Where all the materials before the court indicate that there is no genuine issue of material

fact and that the party moving for summary judgment is entitled to it as a matter of law,

summary judgment is proper.  *Celotex Corp.*, 477 U.S. at 322; *Everett v. Napper*, 833

F.2d 1507, 1510 (11th Cir. 1987).  Although factual inferences must be viewed in a light

most favorable to the non-moving party, and pro se complaints are entitled to liberal

interpretation by the courts, a pro se litigant does not escape the burden of establishing a

genuine issue of material fact.  *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).


### III.  FACTS[2]

On or around the morning of May 9, 2007, a dispatcher requested that officers

report to 5300 Atlanta Highway in reference to a black male subject wanted for

committing bank fraud.  (Doc. No. 47-4, p. 2.)  The dispatcher also indicated that the man

was driving a blue Ford Focus.  (*Id.*)  When turning into the parking lot, City of

---

[2] As recounted by the court, these facts are stated favorably for the plaintiff.  The court makes no
factual findings, and the actual facts may be different than those stated here.

Montgomery Police Officers Byrd and Davis spotted a blue Ford Focus parked in front of a Publix supermarket.  (*Id*.)  When Shaw got out of the Ford, the officers approached and asked him to walk over to their police vehicle.  (*Id*.)  While the officers were conducting a pat down search for weapons, a bank manager drove up and identified Shaw as the man who committed acts of fraud at his bank.  (*Id*.; Doc. No. 23, p. 2.)  When questioned by the officers, Shaw refused to identify himself.  (Doc. No. 47-4, p. 2.)  At some point, Officers Coughlin and Hall arrived on the scene.  (Doc. No. 30, Pl's Amend. Comp., p. 6 of 28.)  Shaw alleges that officer Hall slammed Shaw's head down onto the hood of a hot truck and held the left side of his face on the hood for a prolonged period of time, causing damage to his left eye.[3]  (*Id*., pp. 6, 9.)

Officer Byrd handcuffed Shaw and placed him in the back of the police car.  (Doc. No. 47-4.)  While transporting Shaw to the Montgomery Police Department, Officer Byrd called Officer Hall at headquarters.[4]  (Doc. No. 47-2, p. 2.)  Officer Byrd advised Officer Hall that "he had a black male subject in possession of several checks in different names

---

[3] Shaw initially asserts that "the defendants, C.J. Coughlin, and Det. Hall slammed and mauled the plaintiff head, face down on the hot hood of their truck and maliciously held the plaintiff head in that position for an unnecessarily prolonged period of time without provocation from the plaintiff."  (Doc. No. 30, p. 6 of 28.)  At a later point in his amendment to the complaint, Shaw attempts to clarify his version of the facts by stating "the plaintiff asserts that addendum defendant mention (supra) is the actual defendant that use the excessive force Detective Hall."  (*Id*., p. 9 of 28.)  The defendants interpret Shaw's statement as a concession that C. J. Coughlin did not use excessive force against Shaw.  Because Shaw is proceeding *pro se* and his pleadings are not a model of clarity, the court cannot conclude that Shaw's attempted clarification of the facts should be construed as an obvious concession that Coughlin did not use excessive force during the incident.

[4] How Hall got back to headquarters before Byrd and Shaw is a mystery which neither the pleadings nor the evidentiary materials help solve.

and that the subject had just tried to present a counterfeit check to RCB bank." (*Id.*)

Officer Grandison then informed Officer Hall that "the subject matched the description of

a subject that had presented counterfeit checks at RCB bank on previous dates, and that

he had a package of evidence from RCB bank with the subject's photo, affidavits of

forgery and certified copies of checks." (*Id.*, p. 3.)

Upon arriving at police headquarters, Shaw told Officer Hall that he did not know

his real name. (*Id.*) After Officer Hall reviewed the evidence provided by Officer

Grandison, Shaw was officially placed in police custody. (*Id.*) Shortly thereafter, Shaw

was transported to the Montgomery County Detention Facility. (*Id.*, p. 4.) During a

subsequent preliminary hearing in the Montgomery County Circuit Court, Officer Hall

testified that Shaw had exhibited symptoms consistent with being high on crack cocaine

while at the Montgomery Police Department headquarters. (*Id.*)

Upon his transfer to the Montgomery County Detention Facility, an officer

questioned Shaw about his medical history and completed an intake questionnaire. (Doc.

No. 13-2, p. 6.) Shaw informed the officer that he wears glasses and suffers from high

blood pressure, diabetes, drug addiction, heart problems, a mental health condition, and

eye problems. (*Id.*) The officer indicated that Shaw showed no signs of trauma or

injuries. (*Id.*)

A few days later, a nurse conducted an initial inmate health assessment. (Doc. No.

6

13-2, p. 4.)  During the evaluation, Shaw indicated that he wears prescription glasses, that he suffers from diabetes, and that he takes Glucophage twice a day.  (*Id*.)  Shaw also reported that he last used crack and marijuana on May 9, 2007.  (*Id*., p. 5.)

On May 12, 2007, Shaw submitted a sick call request, requesting diabetes medication and the return of his glasses from the city jail.[5]  (Doc. No. 13-2, p. 12.)  Later that afternoon, medical personnel ordered that Shaw receive Glucophage 500 milligram tablets twice a day.  (*Id*., p. 3.)  At that time, medical personnel also began routinely monitoring Shaw's blood sugar level.  (*Id*., pp. 7-10; Doc. No. 13, p. 2.)

On June 4, 2007, Shaw submitted an additional sick call request, claiming that he suffered from "blindness in left and numbness in left arm and left side."  (Doc. No. 13-2, p. 1.)  Dr. Bates conducted an examination on June 8, 2007, noting that Shaw complained of suffering from blindness in his left eye for several months, with the problem worsening over the past three or four weeks.  (*Id*., p. 31.)  Shaw also reported that the problem worsened when law enforcement officers pushed the left side of his head down onto a car hood.  (Doc. No. 13, p. 3.)  Dr. Bates determined that, with respect to Shaw's left arm and side, there were no neurological deficits and that Shaw had vision in his left eye on confrontation.  (*Id*., p. 2; Doc. No. 13-2, p. 1.)  Shaw indicated that, although he was able to see fingers held in front of him, the image was blurry.  (*Id*.)  Dr. Bates assessed that a

---

[5] There is no dispute that, at some point, Shaw received a pair of prescription glasses.

more thorough examination, including the dilation of Shaw's pupils, was necessary and

instructed Shaw to return for a re-examination the following week.  (Doc. No. 13-2, p. 1.)

One week later, Dr. Bates dilated Shaw's left pupil and performed a fundoscopic

exam.  (Doc. No. 13, p. 3; Doc. No. 13-2, p. 13.)  The exam revealed no abnormalities,

such as retinal detachment or severe diabetic retinopathy.  (*Id*.)  On July 2, 2007, Dr.

Bates conducted additional testing, including measuring Shaw's ocular pressure, and

found that the level of pressure was normal.  (*Id*.)   Dr. Bates determined that an

examination by a free-world physician was unnecessary because, in his opinion, Shaw's

loss of vision could not be confirmed upon examination and there was no treatable cause

for the condition.  (Doc. No. 13, p. 4.)  Dr. Bates also suspected that Shaw's vision

problems were "likely due to decreased visual acuity from a refractive error, which is

correctable with the use of glasses."[6]  (*Id*.)

## IV.  DISCUSSION

### A.  The Failure to Exhaust

In their reports, the defendants assert that Shaw's claims concerning retaliation,

access to courts, and conditions of confinement are due to be dismissed because Shaw has

failed to exhaust his available administrative remedies as required by the Prison Litigation

---

[6] The undisputed evidentiary materials indicate that Shaw was provided a pair of prescription glasses at some point during his incarceration in the Montgomery County Detention Facility.

Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).  Specifically, the defendants maintain and

the evidentiary material demonstrate that, with respect to Shaw's claims  concerning

retaliation, the destruction of his outgoing mail, and the conditions of confinement in the

jail, Shaw has failed to properly exhaust the administrative remedies available to him

through the Montgomery County Detention Facility's grievance procedure.  (Doc. No. 22,

pp. 13-14;  Doc. No. 48, pp. 2-4, 12;  Doc. No. 48-3, p. 3;  Doc. No. 50, p. 4.)

The PLRA requires exhaustion of available administrative remedies before a

prisoner can seek relief in federal court on a § 1983 complaint.  Specifically, 42 U.S.C. §

1997e(a) states that "[n]o action shall be brought with respect to prison conditions under

section 1983 of this title, or any other Federal law, by a prisoner confined in any jail,

prison, or other correctional facility until such administrative remedies as are available

are exhausted."  "Congress has provided in § 1997(e)(a) that an inmate must exhaust

irrespective of the forms of relief sought and offered through administrative remedies."

*Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001).  "[T]he PLRA's exhaustion requirement

applies to all inmate suits about prison life, whether they involve general circumstances or

particular episodes, and whether they allege excessive force or some other wrong."

*Porter v. Nussle*, 534 U.S. 516, 532 (2002).  Moreover, exhaustion of all available

administrative remedies is a precondition to litigation and a federal court cannot waive

the exhaustion requirement.  *Jones v. Bock,* ___ U.S. ___, 127 S. Ct. 910, 918-19 (2007)

("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). *See also Booth*, 532 U.S. at 741; *Alexander v. Hawk*, 159 F.3d 1321, 1325 (11th Cir. 1998).

Furthermore, the plaintiff is required by the PLRA to *properly* exhaust his claims. *Woodford v. Ngo*, 548 U.S. 81, ___, 126 S. Ct. 2378, 2387 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without some orderly structure on the course of its proceedings." *Id*. at 2386. Thus, "a prisoner must complete the administrative review process in accordance with applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Id*. at 2384.

It is undisputed that the Montgomery County Detention Facility has a grievance procedure. (Doc. No. 71-2.) The evidentiary materials, however, indicate that Shaw did not file any grievances complaining about the conditions of confinement, the destruction of mail, or acts of retaliation against him. The court therefore concludes that Shaw's claims concerning the conditions of confinement, the destruction of mail, and acts of retaliation are subject to dismissal as Shaw has not yet exhausted an available administrative remedy. *See Jones*, ___ U.S. at ___, 127 S. Ct. at 923; *Woodford*, ___ U.S. at ___, 126 S. Ct. at 2383; *Porter*, 534 U.S. at 524; *Booth*, 532 U.S. at 739. Consequently, the defendants' motion for summary judgment with respect to the

plaintiff's claims concerning the conditions of confinement, the destruction of outgoing mail, and retaliation should be granted and these claims should be dismissed without prejudice.

## B.  The Taking of Property

Shaw asserts that, at some point during his arrest or transfer from the city jail to the Montgomery County Detention Facility, Officers Hall and Coughlin unlawfully seized his personal items, including $1000 cash, a gold chain and medallion, a gold watch, and a gold Masonic ring.  Officers Coughlin and Hall admit that the Montgomery Police Department has possession of Shaw's personal property.  (Doc. No. 47, Exhs. A & B.)  However, the officers assert that Shaw's personal property was seized incident to his arrest and was impounded for the purpose of safeguarding evidence used during state criminal proceedings.  (*Id*.)

Under *Younger v. Harris*, 401 U.S. 37,43-44 (1971), a federal court must refrain from interfering with pending state criminal proceedings "when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." The *Younger* abstention doctrine is premised upon a fundamental "public policy against federal interference with state criminal prosecutions."  *Id*. at 43.

In this case, Shaw has an adequate remedy at law because he may pursue his

federal constitutional issue through the state court system in the on-going state criminal proceedings. *See generally Doby v. Strength*, 758 F.2d 1405 (11th Cir. 1985). Moreover, Shaw has not alleged the existence of any special circumstances which create a threat of irreparable harm. The mere fact that Shaw must endure state criminal proceedings, including the impoundment of his personal property, fails to demonstrate irreparable harm. *Younger*, 401 U.S. at 45. This court must therefore abstain from considering the merits of any claims presented by Shaw which challenge the constitutionality of criminal charges pending against him before the state courts. Thus, dismissal of his challenge to the impoundment of his personal property in state court is appropriate at this time. Consequently, the defendants' motion for summary judgment with respect to Shaw's challenge to the impoundment of his personal property is due to be granted and this claim be dismissed without prejudice.

To the extent Shaw asserts that Officers Hall and Coughlin negligently lost his gold chain and medallion, the court concludes that he is entitled to no relief in this court. Pursuant to ALA. CODE §§ 11-47-23 and 11-47-192, no claim will lie against a city or town for personal injury unless a sworn statement by the party injured is filed with the city clerk within six months of the date of injury.[7] It is undisputed that Shaw did not file

---

[7]ALA. CODE § 11-47-192 reads as follows:

No recovery shall be had against any city or town on a claim for personal injury received, unless a sworn statement be filed with the clerk by the party injured or his personal representative in case of his death stating substantially the manner in which the injury was

a sworn statement with the Clerk of the City of Slocomb within six months of his arrest. The law is well-settled in Alabama that a sworn statement is a prerequisite before a suit against a city or municipality will be allowed to proceed. *See Shows v. Morgan*, 40 F.Supp.2d 1345, 1365 (M.D. Ala. 1999) (dismissing state law claims against city and its officers in their official capacity because of plaintiff's failure to comply with Alabama's notice-of-claim statutes); *Poe v. Grove Hill Mem'l Hosp. Bd.*, 441 So. 2d 861, 863 (Ala. 1983) ("Therefore, to satisfy the statutory requirement, a plaintiff in a tort action against a municipality must file a sworn statement with the clerk within six months from the accrual of the claim."). *See also Cox by and through Cox v. City of Birmingham*, 518 So. 2d 1262, 1264 (Ala. 1987) (statement must be sworn).

Actual notice of a claim does not replace the statutorily required notice. "Mere knowledge of the incident resulting in the injury does not satisfy the objectives of the notice-of-claim statute." *Large v. City of Birmingham*, 547 So. 2d 457, 458 (Ala. 1989). *See generally City of Montgomery v. Weldon*, 195 So. 2d 110, 112 (Ala. 1967) (plaintiff

---

received, the day and time and the place where the accident occurred and the damages claimed.

ALA. CODE § 11-47-23 provides, in pertinent part:

All claims against the municipality . . . shall be presented to the clerk for payment within two years from the accrual of said claim or shall be barred. Claims for damages growing out of torts shall be presented within six months from the accrual thereof or shall be barred.

Alabama law is clear that these sections are to be considered *in pari materia*. *Poe v. Grove Hill Mem'l Hosp. Bd.,* 441 So. 2d 861 (Ala. 1983); *Harris v. City of Montgomery*, 435 So. 2d 1207 (Ala. 1983).

could not satisfy the notice of claim requirement "even though he had sent a letter to city officials detailing the accident and his injuries, principally because he had not stated the amount of damages claims and had not sworn to the statement.").  Thus, the court concludes that the officers' motion for summary judgment with respect to Shaw's negligence claim should be granted.[8]

### C. Claims against Sheriff Marshall and Chief Baylor

The law is well settled that a defendant cannot be held liable in an action brought pursuant to 42 U.S.C. § 1983 under the theory of respondeat superior.  *Gray ex rel. Alexander v. Bostic*, 458 F.3d 1295, 1308 (11th Cir. 2006);  *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994); *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990); *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986).  Additionally, the language of 42 U.S.C. § 1983 requires proof of an affirmative causal connection between the actions taken by a defendant and the alleged constitutional deprivation.  *Zatler v. Wainwright*, *supra*.

Although supervisory officials cannot be held liable under § 1983 for the unconstitutional actions of their subordinates based on respondeat superior liability, *Gray*,

---

[8]Of course, Shaw has no § 1983 claim for negligent loss of property.  *Daniels v. Wiliams*, 474 U.S 327, 106 S.Ct. 662 (1986) (The due process clause is not implicated by a negligent act of an official causing unintended loss of life, liberty or property).

*supra*, supervisors can be held liable for subordinates' constitutional violations on the

basis of supervisory liability under 42 U.S.C. § 1983.  *Cottone v. Jenne*, 326 F.3d 1352,

1360 (11th Cir.2003). Supervisory liability under § 1983 occurs "when the supervisor

personally participates in the alleged constitutional violation or when there is a causal

connection between the actions of the supervising official and the alleged constitutional

deprivation." *Id.*  A causal connection may be established when: (1) a "history of

widespread abuse" puts the responsible supervisor on notice of the need to correct the

alleged deprivation, and he or she fails to do so; (2) a supervisor's custom or policy results

in deliberate indifference to constitutional rights; or (3) facts support an inference that the

supervisor directed subordinates to act unlawfully or knew that subordinates would act

unlawfully and failed to stop them from doing so. *Mathews v. Crosby,* 480 F.3d 1265,

1270 (11th Cir. 2007); *Cottone*, 326 F.3d at 1360.  Deprivations that constitute wide

spread abuse sufficient to constitute notice to the supervising official must be "obvious,

flagrant, rampant and of continued duration rather than isolated occurrences."  *Brown v.*

*Crawford*, 906 F.2d 667, 671 (11th Cir.1990).

Shaw's complaint is devoid of any specific allegations against Marshall and

Baylor.  In addition, Shaw has failed to present any evidence indicating that there is a

history of widespread abuse which placed Marshall and Baylor on notice of a need to stop

an alleged deprivation,  that their customs or policies resulted in deliberate indifference to

Shaw's constitutional rights, or that they directed subordinates to act unlawfully or failed to stop them from doing so.   Moreover, it is clear that Marshall and Baylor are not in any way involved with the actions about which Shaw complains and that these defendants are being sued solely because of their administrative positions.   Thus, the defendants' motion for summary judgment with respect to the claims against Marshall and Baylor should be granted.[9]

### D.  Unlawful Arrest

To the extent Shaw asserts that the defendants arrested him without probable cause in violation of the Fourth Amendment, the court concludes that the defendants' motion for summary judgment is due to be granted.  In *Ortega v. Christian*, 85 F.3d 1521 (11th Cir. 1996), the Court set forth the following explanation of the law relating to probable cause to arrest without a warrant:

> A warrantless arrest without probable cause violates the Fourth Amendment and forms a basis for a section 1983 claim. *Marx v. Gumbinner,* 905 F.2d 1503, 1505 (11th Cir. 1990).  An arrest made with probable cause, however, constitutes an absolute bar to a section 1983 action for false arrest. *Marx*, 905 F.2d at 1505.  Probable cause to arrest exists if the facts and circumstances within the officer's knowledge, of

---

[9] As previously discussed, the conditions-of-confinement claim against Sheriff Marshall is due to be dismissed without prejudice.  Nonetheless, even assuming Shaw had properly filed a grievance challenging the conditions of confinement, this court would conclude that the claim is due to be dismissed with prejudice as it is clear that Sheriff Marshall is not in any way involved with the actions about which Shaw complains and is being sued solely because of his administrative position.

> which he has reasonably trustworthy information, would cause a prudent
> person to believe, under the circumstances shown, that the suspect has
> committed or is committing an offense. *Marx,* 905 F.2d at 1505. Probable
> cause does not require overwhelmingly convincing evidence, but only
> "reasonably trustworthy information." *Marx,* 905 F.2d at 1506 (citing *Beck
> v. Ohio*, 379 U.S. 89, 91, 85 S. Ct. 223, 225-26, 13 L.Ed.2d 142 (1964)).

*Id.* at 1525. *See also United States v. Gordon*, 231 F.3d 750, 758 (11th Cir. 2000)

("Probable cause to arrest exists when law enforcement officials have facts and

circumstances within their knowledge sufficient to warrant a reasonable belief that the

suspect had committed or was committing a crime.").

The undisputed facts show that Shaw was arrested after officers saw him get out of

a vehicle matching the description of a vehicle involved in the bank fraud incident and

only after the bank manager identified him as the individual who committed fraudulent

acts at his bank. The arresting officers had reasonably trustworthy information that would

cause a prudent person to believe that Shaw had committed a crime. Therefore, the

officers had probable cause to arrest Shaw for bank fraud. Consequently, the motion for

summary judgment with respect to this claim should be granted in favor of the

defendants.

### E.  The Use of Force

Shaw claims that Officers Coughlin and Hall violated his right to be free from

excessive force. The defendants deny that they used excessive force against Shaw and

maintain they are entitled to qualified immunity.

When evaluating a claim of qualified immunity, the court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation. *Saucier v. Katz*, 533 U.S. 194, 197 (2001). While the facts indicate that Shaw had already been "'seized' and, for all intents and purposes, arrested at the time of the alleged abuses," it is clear that he had not yet acquired the status of a pretrial detainee. *See Calhoun v. Thomas*, 360 F. Supp. 2d 1264, 1271-72 (M.D. Ala. 2005). Shaw was not under a formal arrest at the time the alleged use of force occurred and had yet to be booked into the Montgomery County Detention Facility. In addition, he had not made an initial appearance before a judge. Thus, the alleged application of excessive force in this case occurred while Shaw was in a "legal twilight zone." *Calhoun, supra.* An analysis under the Fourth Amendment is appropriate in post-seizure, pre-detention allegations of excessive force. *Id.* at 1274. Consequently, the Fourth Amendment is the specific constitutional right allegedly infringed by the challenged application of force in this case. *Id. See also Vinyard v. Wilson*, 311 F.3d 1340, 1347 (11th Cir. 2002) (analyzing plaintiff's claim that she was subjected to the use of excessive force during a ride to the jail under the Fourth Amendment).

The Fourth Amendment's freedom from unreasonable searches and seizures

18

encompasses the plain right to be free from the use of excessive force.  *See Graham v. Conner*, 490 U.S. 386, 394-95 (1989).  To determine whether the amount of force used by a police officer was appropriate, the court must consider "whether a reasonable officer would believe that this level of force is necessary in the situation at hand."  *Willingham v. Loughnan*, 261 F.3d 1178, 1186 (11th Cir. 2001).  The court must balance "'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake."  *Graham*, 490 U.S. at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)).

When balancing the necessity of using some force against an individual's constitutional rights, a variety of factors are considered, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  *Graham*, 490 U.S. at 396.  Thus, the force used by a police officer "must be reasonably proportionate to the need for that force, which is measured by the severity of the crime, the danger to the officer, and the risk of flight."  *Lee v. Ferraro*, 284 F.3d 1188, 1198 (11th Cir. 2002).

Shaw alleges that, although he did not resist arrest, Officers Coughlin and Hall slammed his head onto the hot hood of a truck and continued to hold his head in that position for a prolonged period of time. Consequently, Shaw has alleged the deprivation

of a constitutional right.  *See Saucier*, *supra.*

The defendants deny that they were present during the apprehension or arrest of Shaw.  Specifically, Coughlin and Hall assert that their first contact with Shaw was when he was transported to the Montgomery County Detective Division for questioning.  (Doc. No. 47-2, p. 2;  47-5, p. 2.)  Shaw, however, alleges that Officers Coughlin and Hall "slammed and mauled [his] head [and] face down on the hot hood of their truck and . . . held [his] head in that position for an unnecessarily prolonged period of time without provocation from the plaintiff."  (Doc. No. 30, Pl's Amend. Comp., p. 6 of 28.)  Thus, there is a factual dispute concerning whether Officers Coughlin and Hall used force against Shaw, whether there was a need for the use of force, and whether the force used was excessive under the circumstances.  Because there are genuine issues of fact, the court declines to decide the qualified immunity issue at this stage of the proceedings.  *See Cottrell v. Caldwell*, 85 F. 3d  1480, 1487-88 (11th Cir. 1996);  *Jones v. City of Atlanta*, 192 Fed.Appx. 894 (11th Cir. 2006).  Based on the forgoing, the motion for summary judgment with respect to the Fourth Amendment claim against Officers Coughlin and Hall should be denied.


**F.  The Medical Claims**

Shaw asserts that Dr. Bates acted with deliberate indifference to his health by

failing to provide adequate medical treatment for an eye condition.  In addition, Shaw

contends that Dr. Bates did not prescribe appropriate medication to regulate his blood

sugar.  Dr. Bates denies that he acted with deliberate indifference to Shaw's medical

condition and, instead, maintains that he rendered appropriate and necessary treatment to

Boyd for his eye problems and diabetes.  To prevail on a claim concerning an alleged

denial of medical treatment violative of the Constitution, a prisoner must, at a minimum,

show that those responsible for providing such treatment acted with deliberate

indifference to his serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor*

*v. Adams*, 221 F.3d 1254 (11th Cir. 2000);  *McElligott v. Foley*, 182 F.3d 1248 (11th Cir.

1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792

F.2d 1052, 1058 (11th Cir.1986).  Specifically, a prison's medical personnel may not

subject inmates to "acts or omissions sufficiently harmful to evidence deliberate

indifference to serious medical needs."  *Estelle*, 429 U.S. at 106, 97 S. Ct. at 292; *Mandel*

*v. Doe*, 888 F.2d 783, 787 (11th Cir.1989).

> In articulating the scope of inmates' right to be free from deliberate
> indifference, ... the Supreme Court ... emphasized that not "every claim by a
> prisoner that he has not received adequate medical treatment states a
> violation of the Eighth [or Fourteenth] Amendment."  *Estelle,* 429 U.S. at
> 105, 97 S. Ct. at 291; *Mandel,* 888 F.2d at 787.  Medical treatment violates
> the [Constitution] only when it is "so grossly incompetent, inadequate, or
> excessive as to shock the conscience or to be intolerable to fundamental
> fairness."  *Rogers,* 792 F.2d at 1058 (citation omitted).  Mere incidents of
> negligence or malpractice do not rise to the level of constitutional
> violations. *See Estelle,* 429 U.S. at 106, 97 S. Ct. at 292 ("Medical

> malpractice does not become a constitutional violation merely because the
> victim is a prisoner."); *Mandel,* 888 F.2d at 787-88 (mere negligence or
> medical malpractice "not sufficient" to constitute deliberate indifference);
> *Waldrop,* 871 F.2d at 1033 (mere medical malpractice does not constitute
> deliberate indifference).  Nor does a simple difference in medical opinion
> between the prison's medical staff and the inmate as to the latter's diagnosis
> or course of treatment support a claim of cruel and unusual punishment.
> *See Waldrop,* 871 F.2d at 1033 (citing *Bowring v. Godwin,* 551 F.2d 44, 48
> (4th Cir.1977)).

*Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991); *Hamm v. DeKalb County*, 774

F.2d 1567 (11th Cir. 1985) (mere fact that a prisoner desires a different mode of medical

treatment does not amount to deliberate indifference).  Thus, a medical care provider may

be held liable under the Eighth Amendment only for acting with deliberate indifference to

a prisoner's health when the provider knows that the prisoner faces a substantial risk of

serious harm and disregards that risk by failing to take reasonable measures to abate it.

*Farmer v. Brennan*, 511 U.S. 825 (1994).

    The undisputed medical records indicate that Shaw was examined by medical

personnel on several occasions for his complaints of blindness or blurred vision.

Although Shaw maintains that he should have received some other type of treatment, the

mere fact that he desired a different mode of medical treatment does not amount to

deliberate indifference.  *Harris*, 941 F.2d at 1505.  In addition, the medical records

indicate that Shaw was provided Glucophage or its equivalent generic medication for the

treatment of his diabetic condition on a routine basis during his incarceration in the

Montgomery County Detention Facility. Shaw presents no significantly probative evidence which demonstrates that Dr. Bates in any way disregarded a substantial risk to his health.  Consequently, Shaw has failed to establish that the defendants acted with deliberate indifference.  Summary judgment is therefore due to be granted in favor of Dr. Bates with respect to Shaw's claims of deliberate indifference to his health.

To the extent Shaw seeks to raise a claim of medical malpractice against Dr. Bates, this court declines to exercise supplemental jurisdiction over the state law claim. If the federal claims over which the court has original jurisdiction are dismissed, the court may decline to exercise supplemental jurisdiction over state law claims.  *See* 28 U.S.C. § 1367(c)(3); *McCulloch v. PNC Bank, Inc.*, 298 F.3d 1217, 1227 (11th Cir. 2002).  In view of this court's determination that the federal claims against Dr. Bates should be dismissed, the court concludes that the supplemental state law claim against this medical defendant should also be dismissed without prejudice.  *Id.*

### G.  The Opening of Mail

Shaw asserts that Savage and Wright violated his constitutional rights by opening his incoming legal mail outside of his presence.  Specifically, Shaw asserts that the defendants "violat[ed] their own rule by opening the posted mail of the plaintiff without him being present."  (Doc. No. 30, Pl's Amend. to Comp., pp. 16-17 of 28.)  This claim is

23

separate from other access to court claims brought by Shaw as to which he has failed to exhaust administrative remedies.[10]  The evidentiary materials indicate that Shaw submitted one inmate request form on September 4, 2007, in which he  informed Wright that he "noticed [she] had open[ed] [his] legal mail prior to . . . bring[ing] it to [him] which is a violation of the policy of MCDF and federal law."  (Doc. No. 48-4, p. 13.)  In a September 7, 2007, memorandum, Wright explained that jail policy required that all legal mail be opened in the presence of the inmate for the purpose of checking for contraband. (*Id.*, p. 12.)  She also acknowledged that she "checked [his] legal mail and removed the staples and handed [him] his mail through the trap door." (*Id.*)  Interference with legal mail implicates an inmate's rights of access to the courts and free speech as guaranteed by the First and Fourteenth Amendments to the United States Constitution.  Thus, the court will discuss whether Shaw has demonstrated genuine issues of material fact with respect to his access-to-court and free speech claims.

1. <u>Access to Courts</u>.  The law is well settled that prisoners are entitled to "a reasonably adequate opportunity" to present claims of constitutional violations to the courts.  *Bounds v. Smith*, 430 U.S. 817, 825 (1977).  In *Lewis v. Casey*, 518 U.S. 343, 349 (1996), the Supreme Court expounded on the decision in *Bounds* and required that an

_____

[10]At least, the court thinks that Shaw has other claims about access to court.  The lack of clarity in his pleadings has led the court to resolve this particular claim and if it is in reality his only claim then Shaw has not been prejudiced by the court's treatment of his claims.

inmate demonstrate the existence of an "actual injury" effecting his effort to pursue a
nonfrivolous legal claim to demonstrate a denial of access to the courts.  Moreover, *Lewis*
emphasized that a *Bounds* violation is related to an inmate's lack of capability to present
claims.  "*Bounds*, which as we have said guarantees no particular methodology but rather
the conferral of a capability -- the capability of bringing contemplated challenges to
sentences or conditions of confinement before the courts.  When an inmate . . . shows that
an actionable claim of this nature which he desired to bring has been lost or rejected, or
that the presentation of such a claim is currently being prevented, because the capability
of filing suit has not been provided, he demonstrates" the requisite injury.  *Lewis*, 518
U.S. at 356.

        Shaw has failed to come forward with any evidence that the actions of the
defendants deprived him of the ***capability*** of pursing his claims in this federal civil action
or in any way hindered his efforts to pursue his claims before this court; rather, Shaw has
demonstrated that he is proficient at presenting and arguing the claims of his choice to
this court.  Specifically, the record in this case demonstrates that Shaw filed numerous
and lengthy pleadings in this case including, but not limited to, motions to amend,
amendments to the complaint, responses to the defendants' special reports and various
evidentiary materials.  Consequently, nothing before the court indicates that the action
about which Shaw complains in any way improperly impeded his efforts to pursue

nonfrivolous legal claims before this court and, therefore, Shaw has failed to establish the requisite injury.[11]  *Lewis*, 518 U.S. at 356.  In the absence of ultimate prejudice or disadvantage, defendants Savage and Wright are entitled to summary judgment with respect to Shaw's claim that the opening of his legal mail deprived him of access to the courts.  *See Chandler v. Baird*, 926 F.2d 1057 (11th Cir. 1991).

2. <u>Free Speech</u>.  An isolated incident of mail opening is insufficient to establish a constitutional violation.  *Davis v. Goord*, 320 F.3d 346, 351 (2nd Cir. 2003) (allegation of two incidents of mail interference did not warrant relief where plaintiff failed to allege invidious intent or actual harm); *Florence v. Booker*, 23 Fed. Appx. 970, 972-973 (10th Cir. 2001) ("single incident in which prison officials allegedly improperly opened legal mail" did not justify relief where plaintiff failed to "show either an improper motivation by defendants or denial of access to the courts"); *Berger v. White*, 12 Fed. Appx. 768, 771 (10th Cir. 2001) ("isolated incidents of opening constitutionally protected legal mail, 'without any evidence of improper motive or resulting interference with [plaintiff's] right to counsel or to access to the courts,' do not support a civil rights claim.  *Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990)"); *Gardner v. Howard,* 109 F.3d 427, 431

---

[11] Shaw argues that the defendants' opening of an envelope which contained an order from this court gave the defendants an unfair advantage in this case. The docket indicates that all of the orders and recommendations entered by this court in Shaw's case are public documents and were sent by this court to both the plaintiff and the defendants.  Thus, Shaw has failed to demonstrate that he suffered any prejudice as the result of the defendants' opening of his legal mail from this court.

(8th Cir. 1997) (isolated incident of inadvertent opening of inmate's incoming legal mail,

without evidence of improper motive or resulting interference with inmate's right to

counsel or access to courts, does not rise to level of constitutional violation); *Stevenson v.*

*Koskey,* 877 F.2d 1435, 1441 (9th Cir. 1989) (inadvertent opening of an inmate's legal

mail, while not to be condoned, constitutes mere negligence and does not rise to the level

of a constitutional rights violation cognizable under 42 U.S.C. § 1983).

     As previously determined, Shaw has failed to demonstrate that the opening of his

mail denied him access to the court.  Moreover, he has utterly and completely failed to

demonstrate that the defendants' actions resulted from improper motivation.  In light of

the foregoing, the court concludes that the isolated opening of Shaw's mail by Wright or

another jail official does not rise to the level of a constitutional violation.  Summary

judgment is therefore due to be granted on this claim.[12]

---

     [12] As previously discussed, Shaw's claim that the defendants prevented his access to the courts by
shredding his outgoing mail is due to be dismissed without prejudice because he failed to exhaust his
administrative remedies.  Nonetheless, even if this court were to assume that Shaw had properly filed a
grievance concerning the destruction of outgoing mail, his access-to-court claim would be dismissed with
prejudice, as nothing before the court indicates that the shredding of mail addressed to this court in any way
improperly impeded his efforts to pursue  non-frivolous legal claims before this court.  Thus, Shaw has failed
to establish the requisite injury.

     Moreover, nothing in the record indicates that the destruction of Shaw's mail was based on an
improper motive. The defendants assert that Shaw's mail was shredded because it was improperly addressed.
Specifically, the defendants maintain that ink pens are considered contraband and that Shaw's letters to this
court were shredded because they were addressed in ink.  The court notes that, although the Montgomery
County Detention Facility's Policy and Procedure Directive directs that "[t]he designated clerk should ensure
. . . [t]he writing on each envelope is written in pencil" (Doc. No. 48), nothing in the inmate handbook states
that inmates are prohibited from addressing envelopes with ink pens.  (Doc. No. 71-2.)  Although the
defendants' asserted reasons for destroying Shaw's mail seem illogically rigid, especially in the absence of

### H.  The State Court Proceedings

Shaw asserts that Officers Coughlin and Hall gave false statements concerning the circumstances of his arrest and the reasons for his detention during a preliminary hearing in the Montgomery County Circuit Court.  The law is well settled that 42 U.S.C. § 1983 does not authorize a claim against a police officer for giving perjured testimony during state court proceedings.  *Briscoe v. LaHue*, 460 U.S. 325 (1983).  "[I]n litigation brought under 42 U.S.C. § 1983 . . . , all witnesses - police officers as well as lay witnesses - are absolutely immune from civil liability based on their testimony in judicial proceedings.  [*Briscoe v. LaHue*,] 663 F.2d 713 ([7th Cir.] 1981)."  *Id.* at 328.  The Court further implied that the false testimony of a police officer in and of itself does not violate an accused's constitutional rights.  *Id.* at 327, n. 1.  Consequently, the motion for summary judgment with respect to this claim should be granted in favor of Officers Coughlin and Hall.


### I.  Dr. Bates' Statements

Shaw alleges that Dr. Bates perjured himself by filing a sworn affidavit with false statements in this court.  Shaw has failed to come forward with any material evidence to

---

any written directive to inmates concerning the destruction of outgoing mail addressed in ink, there is no evidence that the defendants' motives were improper.  Consequently, Shaw's claim likewise fails to rise to the level of a constitutional violation.

support his perjury claim against Dr. Bates.  His mere conclusory allegations are not

sufficient to oppose Dr. Bates' properly supported motion for summary judgment.  *Harris*

*v. Ostrout*, 65 F.3d 912 (11th Cir. 1995).  Moreover, there is no admission on the part of

Dr. Bates or jail officials that the information is false.  *Cf.  Monroe v. Thigpen*, 932 F.2d

1437 (11th Cir. 1991) (holding that reliance on *admittedly* false information to deny

Monroe consideration for parole was arbitrary and capricious treatment violative of the

Constitution); *Slocum v. Georgia State Bd. of Pardons and Paroles*, 678 F.2d 940 (11th

Cir. 1982).  Consequently, the motion for summary judgment with respect to Shaw's

claim that Dr. Bates provided a perjured statement or false information in his affidavit to

this court is due to be granted.[13]

## V.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge as follows:

1.     That the motion for summary judgment with respect to Shaw's claims

concerning retaliation against Officer Smith (Doc. Nos. 22 & 49), the

destruction of mail against Savage, Smith, and Wright (Doc. Nos. 22 & 49),

and the conditions of confinement against Marshall and Savage (Doc. No.

---

[13] To the extent Shaw asserts Savage, Wright, and Smith provided false information to this court, Shaw's contention is likewise without merit.  Shaw's mere conclusory allegations are not sufficient to oppose the defendants' properly supported motion for summary judgment. *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995).

22) be granted and these claims be dismissed without prejudice.

2.      That to the extent the plaintiff claims that Officers Coughlin and Hall used

        excessive force against him in a supermarket parking lot, the motion for

        summary judgment be DENIED.  (Doc. Nos. 23 & 47.)

3.      That the motion for summary judgment with respect to the remaining claims

        against the defendants be GRANTED.  (Doc. Nos. 22, 23, 41, 47, 48, 49.)

4.      The excessive force claim against Officers Coughlin and Hall be set for a

        jury trial.

Finally, it is
ORDERED that the parties shall file any objections to the said Recommendation

on or before April 25, 2008.  Any objections filed must specifically identify the findings

in the Magistrate Judge's Recommendation to which the party objects.  Frivolous,

conclusive or general objections will not be considered by the District Court.  The parties

are advised that this Recommendation is not a final order of the court and, therefore, it is

not appealable.

        Failure to file written objections to the proposed findings and recommendations in

the Magistrate Judge's report shall bar the party from a de novo determination by the

District Court of issues covered in the report and shall bar the party from attacking on

appeal factual findings in the report accepted or adopted by the District Court except upon

grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir.

1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 9th day of April, 2008.

_____/s/Charles S. Coody_____
CHARLES S. COODY
CHIEF UNITED STATES MAGISTRATE JUDGE

31